IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 18-cv-00792-RBJ

UNITED STATES OF AMERICA, *ex rel.*
KATHRYN MCIVER et al,

      Plaintiffs,

v.

ACT FOR HEALTH, INC, d/b/a Professional Case Management and
KEVIN VOLLMER,

      Defendants.

---

## ORDER on MOTION TO DISMISS/JUDGMENT ON THE PLEADINGS

---

Defendants move to dismiss and for judgment on the pleadings. For the reasons set forth herein, the motion is denied.

## BACKGROUND

ACT for Health, Inc., doing business as Professional Case Management ("PCM"), is a Colorado-based company that provides home health care services for current and former Energy Department employees who are eligible for benefits under the Energy Employees Occupational Illness Compensation Program Act ("EEOICPA"), 42 U.S.C. § 7384.[1] Kevin Vollmer is the sole owner of PCM. The beneficiaries of the services are workers who have become ill due to exposure to radiation and other harmful substances while on the job, such as at federal weapons sites. The services are provided by registered nurses, licensed practical nurses, and various other

---

[1] The EEOICPA is administered by the U.S. Department of Labor's Office of Workers' Compensation Programs ("OWCP").

categories of medical and non-medical aids and assistants.  PCM bills the United States for the services it provides.

Plaintiffs Kathryn McIver and Cassandra Ohnstad filed this lawsuit against PCM on April 4, 2018 under the qui tam provisions of the False Claim Act.  At that time Ms. McIver was PCM's Senior Director of Clinical Operations, but she no longer works for PCM.  Ms. Ohnstad formerly was PCM's Vice President of Human Services.  The case remained largely dormant while the United States considered whether to intervene.  It declined to do so on September 18, 2019.  ECF No. 18.

Although it is a federal program, several of the states in which PCM operates require that providers of home health care services (and professionals who physically provide the services such as nurses) must be licensed.  The EEOICPA and regulations thereunder require that providers comply with the state requirements.  However, the date when this was first required is disputed, and that is a central issue in this case.  PCM contends that this was first required on April 9, 2019, the effective date of a regulation adopted on February 8, 2019 that expressly requires compliance with state requirements, 20 C.F.R. 30.400(c), and that it has complied with this regulation.  Plaintiffs claim that the regulation only clarified the requirement that providers comply with both federal and state licensure requirements which had existed since 2006, and that PCM had knowingly and intentionally violated the requirement for many years.

### Second Amended Complaint

In their Second Amended Complaint, which is the operative complaint in this case, plaintiffs cite OWCP's Notice of Proposed Rulemaking which started the process that resulted in the regulation that became effective on April 9, 2019.  The Notice stated, "[T]he Department proposes to add new language in this paragraph to explain the current qualifications that must be met before hospitals and providers of medical services or supplies may furnish appropriate

services, drugs, supplies and appliances to covered employees." ECF No. 33 at ¶43 (quoting 80 Fed. Reg. 72296, 72299 (Nov. 18, 2015)).

As evidence of PCM's knowledge of the necessity that it comply with state licensure requirements before April 9, 2019, plaintiffs point to a lawsuit filed by PCM in Kentucky, *ACT for Health v. United Energy Workers Healthcare Corp.*, No. 5:15-cv-195 (D. Ken.). *See* ECF No. 33 at ¶¶103-08. In that case, filed August 21, 2015, PCM contended that a competitor engaged in unfair competition by, among other things, operating in violation of Kentucky's laws and regulations regarding the licensure of health care service providers.[2]

Plaintiffs also point to another lawsuit pending in this district, *ACT for Health v. United States Department of Labor*, No. 19-cv-00827-DDD, in which PCM challenges the process that resulted in the April 9, 2019 rule. ECF No. 33 at ¶46. In a motion to dismiss that case, which has been briefed but not yet decided, the defendants note that when the final rule was published, "OWCP explained that 'this rule is largely an update to the existing regulations to reflect the program's current processes, and incorporates the policy and procedural changes that have been implemented since the existing regulations were issued in 2006, rather than imposing any new regulatory burdens.'" ECF No 46 in No. 19-cv-00827-DDD at 3 (quoting 84 Fed. Reg. 3026 (Feb. 8, 2019)). The government's motion to dismiss in that case also cites PCM's position in its Kentucky case. *Id.* at 14, n.2.

Plaintiffs allege that PCM has concealed its failure to comply with state licensure requirements by using provider identifications from three states in which PCM is actually licensed (Colorado, Tennessee, and New Mexico) when it bills for services rendered in other states. ECF No. 33 at ¶¶112-15. As an example of what they claim was fraudulent conduct,

---

[2] The case was dismissed for failure to state a claim upon which relief could be granted, 2018 WL 2090819 (D. Ken. May 3, 2018), *aff'd, ACT for Health v. United Energy Workers Healthcare Corp.*, 784 F. App'x 295 (6th Cir. 2019) (unpublished).

plaintiffs allege that PCM operated in Texas without a license for five years, avoiding Texas's oversight and licensing fees and even altering patient and employee records to create the appearance that services were begun after PCM applied for a provisional license in 2016. *Id.* at ¶¶116-43. Plaintiffs allege that similarly practices took place in Washington, New Mexico, Nevada, Georgia and South Carolina. *Id.* at ¶¶144-46.

Plaintiffs further allege that "states develop minimum standards of care and requirements for healthcare worker licensing, worker qualifications, training, record retention, and mandatory reporting of abuse, neglect and exploitation." *Id.* at ¶151. According to plaintiffs, PCM's practice of operating without a state license deprives patients of state oversight and puts them at risk. *Id.* at ¶155. They also allege that "PCM hires and assigns work to home healthcare workers, who are not properly registered or licensed – and in some cases qualified to be licensed/registered – further putting patients at risk of exploitation, abuse, injury, or death." *Id.* at ¶158. They cite as examples an incident of alleged physical abuse of a patient in Texas in March 2017 before PCM was licensed there and an incident of a theft of a purse and an iPad from another patient in Texas that PCM covered up in order to avoid disclosing that PCM was not licensed in Texas. *Id.* at 162-166.

Ms. McIver claims to be aware of other incidents of patient exploitation that have gone unreported in states where PCM was operating without a license. *Id.* at ¶167. She claims that she made anonymous complaints because, effective in approximately the fall of 2017, PCM adopted a policy that only two individuals, Greg Austin (PCM's President) or Brad Drevno (Chief Operating Officer), could report incidents of abuse or neglect to licensing authorities. *Id.* at 169.

Based on these allegations plaintiffs assert two claims for violation of the False Claims Act: (1) liability for false claims, 31 U.S.C. § 3729(a)(1)(A); and (2) liability for false statements

and records, 31 U.S.C. § 3729(a)(1)(B).  They pray for the following relief: (1) an order

requiring PCM to cease and desist violation of the False Claims Act; (2) three times the

(unspecified) damages that the United States has sustained because of PCM's actions; (3) civil

penalties between $5,500 and $11,000 for each violation; (4) an award to the plaintiffs of

between 15% and 30% of the proceeds or settlement of any related administrative, criminal or

civil action, including the monetary value of any equitable relief, fines, restitution, or

disgorgement to the United States or third parties; and (5) costs and attorney's fees.  *Id.* at 26.

### Motion to Dismiss and for Judgment on the Pleadings

On October 2, 2020 defendant Vollmer moved to dismiss the Second Amended

Complaint under Rule 12(b)(6) for failure to state a claim on which relief could be granted.  ECF

No. 54.  In the same motion, but because it had answered the Second Amended Complaint,

defendant PCM moved for judgment on the pleadings under Rule 12(c).  *Id.*  Defendants make

three basic arguments: (1) compliance with state licensing requirements was not required until

April 4, 2019; (2) plaintiffs did not plausibly allege any false claim; and (3) plaintiffs did not

plausibly allege that state licensure was material to the government's decision to reimburse

PCM's claims.

Plaintiffs have filed their response, ECF No. 62.  Defendants have filed their reply, ECF

No. 63.  Oral argument was held on December 2, 2020.[3]  On December 18, 2020 plaintiffs filed

a notice of supplemental authority.  ECF No. 66.

### STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts

to state a claim to relief that is plausible on its face."  *Ridge at Red Hawk, L.L.C. v. Schneider*,

493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

---

[3] A transcript of the argument has been filed at ECF No. 68.

570 (2007)).  A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While the Court must accept the well-pled allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), conclusory allegations are not entitled to be presumed true.  *Iqbal*, 556 U.S. at 681.  However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard.  *See, e.g.*, *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).  A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6).  *Atlantic Richfield Co. v. Farm Credit Bank of Wichita,* 226 F.3d 1138, 1160 (10th Cir. 2000).

## ANALYSIS AND CONCUSIONS

### A.  Was State Licensure Required Before April 4, 2019?

The Court answers this question "yes."  PCM argues that it was not until the regulation now found at 20 C.F.R. § 30.400(c) became effective on April 4, 2019 that providers of services under the EEOICPA were required to comply with licensure requirements in states in which they operate.  I disagree.

Before April 4, 2019 the regulations did not expressly require state licensure.  However, in addressing the "implied false certification" theory of False Claim Act liability, which I will discuss in more detail later in this order, the Supreme Court held that "[d]efendants can be liable for violating requirements even if they were not expressly designated as conditions of payment." *Universal Health Services, Inc. ex rel. Escobar v. United States*, 136 S.Ct. 1989, 1996 (2016). The OWCA indicated at the beginning of the rulemaking process in 2015 that the new language was intended to "explain the *current qualifications* that must be met before hospitals and

providers of medical services or supplies may furnish appropriate services, drugs, supplies and appliances to covered employees."  80 Fed. Reg. 72296, 72299 (Nov. 18, 2015) (emphasis added).  Consistently, OWCP reiterated at the conclusion of the rulemaking process that "this rule is largely an *update to the existing regulations to reflect the program's current processes*, and incorporates the policy and procedural changes that have been implemented since the existing regulations were issued in 2006, *rather than imposing any new regulatory burdens*."  84 Fed. Reg. 3026 (Feb. 8, 2019) (emphasis added).

Notably, as plaintiffs in this case and the OWCA in *ACT for Health v. United States Department of Labor,* No. 19-cv-0027-DDD both have indicted, in PCM's Kentucky lawsuit in 2015 it challenged a competitor's failure to comply with Kentucky licensure requirements, arguing that the failure supported a finding of unfair competition.[4]  That was an acknowledgement that state licensure was required well before the current clarifying regulation became effective.  Although it is a matter of disputed fact as to whether PCM knew of but attempted to evade licensure requirements in Texas and several other states prior to the enactment of the new regulation, *compare* ECF No. 33 at ¶¶143-46 *with* ECF No. 39 (PCM's Answer) at ¶¶143-46, I do not consider that dispute to be material to the resolution of the legal issue.

In short, the Court concludes as a matter of law that PCM was required to comply with state licensing requirement as a condition of seeking reimbursement for home healthcare services

---

[4] In No. 19-cv-827-DDD the government referred to a PCM brief in the Kentucky case: "Indeed, PCM has filed multiple lawsuits against its competitors alleging that PCM is properly credentialed to offer services to EEOICPA beneficiaries, while its competitors are not.  *See, e.g., Act for Health v. United Energy Workers Healthcare Corp.,* No. 18-5900 (6th Cir.), Appellants Opening Brief, 2018 WL 5367461, at *3 (6th Cir. filed Oct. 26, 2018) (PCM and defendants "provide home health services under a federally funded program [EEOICPA] for eligible beneficiaries who formerly worked at federal nuclear weapons facilities.  PCM and the [defendants] must be authorized by Kentucky law to provide these home health services.  PCM is properly licensed; the [defendants] are not.").  *Id.* at 14, n.2.

from the OWCA under the EEOICPA at least from 2015 forward, and probably as far back as 2006.

**B.   Have Plaintiffs Plausibly Alleged a False Claim?**

Again, the Court's answer is "yes."  Plaintiffs allege that every claim PCM submitted over a period of several years for services rendered in states that had state licensure requirements implicitly represented that PCM was in compliance with federal and state licensing requirements. *See Escobar*, 136 S.Ct. at 1995-96 (when a provider submits a claim for payment, it impliedly certifies compliance with all conditions of payment).  PCM was not always in compliance. Indeed, during oral argument defense counsel admitted that PCM was not licensed in, and therefore was not in compliance with the requirements of, some of the states in which it was operating; and that in seeking reimbursement for its services from the federal government, PCM did not disclose its noncompliance.  Whether one views the submission of bills for reimbursement without making that disclosure as a misrepresentation or as an omission, plaintiffs have plausibly alleged that PCM made false claims.

**C.   Have Plaintiffs Plausibly Alleged That State Licensure was Material to the Government's Decision to Reimburse PCM's Claims?**

Here, my answer again is "yes," though it is a closer question.

In *Escobar* the Court addressed the "implied false certification" theory of False Claim Act liability:

> According to this theory, when a defendant submits a claim, it impliedly certifies compliance with all conditions of payment.  But if that claim fails to disclose the defendant's violation of a *material* statutory, regulatory, or contractual requirement, so the theory goes, the defendant has made a misrepresentation that renders the claim "false or fraudulent" under [31 U.S.C.] § 3729(a)(1)(A).

136 S.Ct. at 1995 (emphasis added).

8

The Court held that this theory can be a basis for liability but only if the provider knew (or should have known) when it submitted its request for payment that its noncompliance with the regulatory requirement would be "material to the Government's payment decision." *Id.* at 1996, 2001. "Material" is defined in the statute to mean "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). "Natural tendency to influence" is an objective, not a subjective, standard.

Discussing the materiality requirement, the Court noted that "materiality look[s] to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation," *Id.* at 2002 (internal quotation marks and citation omitted). A regulatory requirement is not material merely because compliance is a condition for payment; or merely because the government could have declined payment had it known of the noncompliance; or where the noncompliance was "minor or insubstantial." *Id.* at 2003. Furthermore, "False Claim Act plaintiffs must also plead their claims with plausibility and particularity under Federal Rules of Civil Procedure 8 and 9(b) by, for instance, pleading facts to support allegations of materiality." *Id.* at 2004 n.6.

In *United States ex rel. Janssen v. Lawrence Memorial Hospital,* 949 F.3d 533 (10th Cir. 2020) the court identified three non-exclusive factors that district courts may consider in evaluating materiality in a False Claims Act case:

> (1) whether the Government consistently refuses to pay similar claims based on noncompliance with the provision at issue, or whether the Government continues to pay claims despite knowledge of the noncompliance; (2) whether the noncompliance goes to the 'very essence of the bargain' or is only 'minor or insubstantial;' and (3) whether the Government has expressly identified a provision as a condition of payment.

*Id.* at 541.

Focusing on those factors, defendants contend that plaintiffs have not alleged that the government has ever failed to pay a claim because of PCM's failure to comply with state licensure requirements, even after plaintiffs allegations were disclosed in this case. ECF No. 54

at 2, 12.  Relatedly, plaintiffs have not alleged that PCM's state licensure "goes to the very essence of the bargain, nor that the government has identified the requirement as a condition of payment.  *Id.* at 13.  Rather, defendants contend that plaintiffs have offered only a conclusory allegation of materiality in paragraph 115 of the Second Amended Complaint: "These omissions and false statements are material to the Department's decision to pay PCM for services."  ECF No. 33 at 17, ¶115.[5]

Plaintiffs dispute that their only allegation of materiality is the conclusory allegation in paragraph 115 (and paragraph 176) of the Second Amended Complaint.  They point to their allegations concerning the value of state oversight and periodic auditing of licensed facilities; training requirements for the individuals providing the home healthcare; and specific examples of incidents adversely affecting patients that they claim were covered up by PCM but might have been caught had state licensing and regulation been in place.  *See* ECF No. 33 at ¶¶150-171.

Plaintiffs add, "'materiality does not require a plaintiff to show conclusively that, were it aware of the falsity, the government would not have paid.  Rather, it requires only a showing that the government *may* not have paid.'"  ECF No. 62 at 11-12 (quoting *United States ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1170 (10th Cir. 2010) (emphasis in original)).  *Lemmon* predated *Escobar.*  But in *Janssen*, which post-dated *Escobar*, the court allowed that "[m]ateriality is a mixed question of law and fact that can be decided as a matter of law if reasonable minds could not differ on the question."  949 F.3d at 539.

The government presumably did not know that PCM was submitting claims for years without being in compliance with state licensure requirements.  If, as defendants have suggested,

---

[5] Plaintiffs similarly alleged in ¶176 that "Defendants have violated and continue to violate the FCA by knowingly submitting or causing the submission of claims for payment to the Department in violation of material requirements of the EEOICPA – namely the requirement that PCM be licensed in and follow the laws of each state where it provides home healthcare agency services which form the basis of claims for payment."  ECF No. 33 at 24.

the government has continued to pay claims after this case was filed and hasn't questioned PCM's noncompliance, this might be indicative, even "very strong evidence," of non-materiality. *See Escobar*, 136 S.Ct. at 2003.  But "very strong evidence" allows for the possibility of another explanation.  The continuing payment of PCM's claims could, for example, reflect bureaucratic neglect or indifference that a reasonable person would not permit.  Also, in their supplemental filing, ECF No. 66-1, plaintiffs provide the Court with a copy of the government's "Statement of Interest" recently filed in *United States ex rel. Gardner v. Vanda Pharmaceuticals, Inc.*, No. 17-cv-00464 (APM) (D.D.C. Dec. 1, 2020).  In that qui tam case the government argued that it is not necessary to demonstrate that government payors would have denied payment had they known of the alleged falsity in order to plead materiality; rather, the Act's materiality standard as indicted in *Escobar* is "natural tendency to influence" a reasonable person, not "would have refused to pay. *Id.* at 2-4.

What the defendants knew about the government's view of materiality is within the defendants' knowledge and control, which impacts the plaintiffs' ability to allege facts relevant to the materiality issue.  *Cf. United States ex rel. Allison v. Southwest Orthopaedic Specialists*, No. CIV-16-0569-F, 2020 WL 5984814, at *7 (W.D. Okla. Oct. 8, 2020) ("[I]n determining whether a plaintiff has satisfied Rule 9(b), courts may consider whether any pleading deficiencies resulted from the plaintiff's inability to obtain information in the defendant's exclusive control.").  Similarly, what the OWCA views as a material omission is within the knowledge of the OWCA, although a clue might be found in this comment on the clarifying rule adopted February 8, 2019: "The Department believes that a provider's failure to inform OWCP that it no longer satisfies all applicable federal and state licensure requirements is significant, rather than a mere administrative mishap, and thus a valid basis for exclusion."  84 Fed. Reg. at

3040.  Although the OWCP's subjective view is not the ultimate issue, it is relevant to whether PCM's noncompliance would have a "natural tendency to influence" OWCP's actions.

Finally, plaintiffs note that on remand in *Escobar* the First Circuit rejected defendants' argument that failure to present evidence that the government had declined payment based on noncompliance defeated materiality on a motion to dismiss.  The court noted that more information "'may come to light during discovery.'"  *Id.* at 14 (citing *United States ex rel. v. Universal Health Services, Inc.* [*Escobar* II], 842 F.3d 103, 111-12 (1st Cir. 2016)).  Furthermore, the *Janssen* case was decided on a motion for summary judgment after the plaintiffs had an opportunity to pursue discovery, not at the motion to dismiss stage.

We shall see what admissible evidence the plaintiffs might obtain in discovery.  We will also have to see what admissible evidence the plaintiffs develop to flesh out their claim for damages.  However, my initial impression that this case was not a good candidate for dismissal at this stage, *see* ECF No. 56, has not been changed by the parties' briefs and argument.

## ORDER

Defendants' motion to dismiss and for judgment on the pleadings, ECF No. 54, is DENIED.

DATED this 6th day of January, 2021.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge